O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CRYSTAL A. MULLER,

                Plaintiff,

    v.

MORONGO CASINO, RESORT, AND SPA; ET AL.,

                Defendants.

Case No. EDCV 14-02308-VAP (KKx)

**ORDER GRANTING MOTION TO DISMISS (DOC. NO. 14) WITHOUT LEAVE TO AMEND**

**[Motion filed on April 8, 2015]**

Plaintiff worked as a slot attendant at a casino owned and operated by the Morongo Band of Mission Indians ("Morongo"), a federally-recognized Indian tribe. Morongo provided her several leaves of absence under a policy it implemented that afforded its employees protections based on the Family Medical Leave Act, 29 U.S.C. § 2601, et seq.  During one such approved leave, Morongo discharged Plaintiff for drug use.  Plaintiff alleges her drug use at the time was connected to the illnesses for which she received the leave in the first place.

1      Plaintiff filed her First Amended Complaint on March
2 10, 2015.  (See Doc. No. 7 ("FAC").)  On April 8, 2015,
3 Defendants filed the instant Motion to Dismiss.  (See
4 Doc. No. 14 ("Notice"); Doc. No. 14-1 ("Motion").)
5
6      After considering the papers filed in support of, and
7 in opposition to, the Motion, and the arguments presented
8 at the June 1, 2015 hearing, the Court GRANTS the Motion
9 and DISMISSES this action WITH PREJUDICE.
10
11                 **I. BACKGROUND**
12 **A.  Factual Background**
13      Plaintiff began working as a slot attendant for the
14 Morongo Casino, Resort & Spa ("MCRS") in about 2002.
15 (FAC ¶ 5.)  MCRS is owned and operated by Morongo, an
16 Indian tribe.  (Id. ¶ 2(b).)[1]
17
18      In 2010, Plaintiff was diagnosed with fibromyalgia
19 and chronic migraine headaches.  (Id. ¶ 6.)  As a result,
20 Plaintiff qualified for, and received, several leaves of
21 absence under the Family Medical Leave Act ("FMLA"), as
22 implemented by Morongo.  (Id.)
23
24      On May 7, 2013, Plaintiff received another leave of
25 absence that was due to expire on August 8, 2013.  (Id. ¶
26
27 _____
28     [1]The Court at times refers to MCRS and Morongo
interchangeably.

1   9.)   On July 26, 2013, while Plaintiff was at work, an

2   unnamed manager sent Plaintiff home because "it was

3   brought up that [she] was taking drugs for her disability

4   for years."  (Id. ¶ 11.)   On July 31, 2013, Plaintiff

5   received a letter from Morongo notifying her she had been

6   discharged "because of her drug use[,] which interfered

7   with her ability to perform her job."  (Id. ¶ 12.)

8

9         Plaintiff made several calls to the Human Resources

10  Department and requested "to appear before the Tribal

11  Counsel" because she had been terminated during an

12  approved leave of absence.  (Id. ¶ 13.)   She alleges that

13  the drugs she was taking did not impair her ability to

14  perform her work.  (Id.)   Plaintiff also repeatedly wrote

15  to Morongo.  (Id. ¶ 15.)   She sought "to arbitrate the

16  matter" (id.), because she had "been informed by Human

17  Resources that Morongo had adopted federal standards for

18  employees under the FMLA[,] and that she could not go to

19  court but could arbitrate" (id. ¶ 14).[2]

20

21        On August 29, 2014, Morongo responded to Plaintiff's

22  letters.  (Id. ¶ 16.)   It informed her that arbitration

23

24

25

26        [2]Plaintiff alleges an agreement that Morongo entered
    into with the State of California states, "[T]he Tribe
27  waives its right to assert sovereign immunity with
    respect to the arbitration and court review of such
28  claims but only up to the limits of the Policy."  (FAC ¶
    17.)

3

1  was not available for employment-related claims, such as

2  hers.  (Id.)

3

4  **B.   Procedural Background**

5       On November 10, 2014, Plaintiff filed the instant

6  lawsuit.  (See Doc. No. 1.)  On March 10, 2015, Plaintiff

7  filed her FAC, titled, "Plaintiff Crystal A. Muller's

8  First Amended Complaint for Equitable Relief or, in the

9  Alternative, Petition to Compel Arbitration."  It is not

10  clear what equitable relief Plaintiff seeks other than to

11  compel arbitration.

12

13       Plaintiff asserts three claims in her FAC: (1)

14  violation of the FMLA (see id. ¶¶ 18-21); (2) violation

15  of the California Family Rights Act (see id. ¶¶ 22-23);

16  and (3) wrongful termination (see id. ¶¶ 25-27).  She

17  alleges these claims against the following Defendants:

18  MCRS, Morongo,[3] Kandi Kelley, and Briton Cook

19  (collectively "Defendants").

20

21       On April 8, 2015, Defendants filed the instant

22  Motion.  On May 11, 2015, Plaintiff filed an opposition.

23  (Doc. No. 17 ("Opposition").)  She attached to her

24  Opposition several exhibits.  (See, e.g. Doc. No. 21,

25  23.)  Defendants filed a reply.  (Doc. No. 19 ("Reply").)

26

27  _____

28       [3]Plaintiff sues the Morongo Tribal Council, which is
    the tribe's elected governing body.  (Motion at 5.)

4

**C.   Exhibits Filed by Plaintiff in Connection With Her Opposition**

Plaintiff has attempted numerous times to file exhibits with her Opposition.  She has failed each time.

Plaintiff initially filed the exhibits as Doc. No. 18.  The Court ordered that document stricken because Plaintiff's counsel, Ms. Haney, failed to redact Plaintiff's sensitive information, including her home address and telephone numbers, as required by the Central District's Local Rules.  (See Doc. No. 20.)  Ms. Haney timely re-filed the exhibits as Doc. No. 21, this time with the appropriate redactions.  With this filing, Ms. Haney submitted her own declaration and simply attached the exhibits without attempting to authenticate them. See Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").  Her declaration discussed, inter alia, her conversations with opposing counsel on the merits of the lawsuit without referencing the attached exhibits. Defendants, therefore, objected to the declaration and exhibits.  (See Doc. No. 22.)

The day after Defendants filed their objection, Ms. Haney filed a document titled, "Notice Errata;

1  Declaration of Gloria Dredd Haney." (Doc. Nos. 23
2  ("Errata").)[4]  In it, she explained that the declaration
3  she filed as Doc. No. 21, although relating to this case
4  and the instant Motion, "was an inadvertent error and
5  mistake." (Doc. No. 23 ¶ 3.)  She "was . . . completely
6  surprised that the wrong declaration was filed," Ms.
7  Haney stated.  (Id.)  Attached to the Errata was a new
8  declaration, signed only by Ms. Haney, which attempted to
9  authenticate the exhibits.  (See Doc. No. 23-1 ("Haney
10 Decl.").)

11

12     As identified by Defendants' additional objections to
13 the Haney Decl. and the attached exhibits (see Doc. No.
14 25), Ms. Haney does not state whether she has personal
15 knowledge of Exhibits A-Q, or whether she is able to
16 authenticate these exhibits.[5]  Ms. Haney only states that
17 these are documents sent or received by her client.
18 That, however, is insufficient for authentication
19 purposes.  See, e.g. Barefield v. Bd. of Trustees of CA
20 State Univ., Bakersfield, 500 F. Supp. 2d 1244, 1258
21 (E.D. Cal. 2007) ("An attorney's declaration may lay a
22 foundation for authentication if the attorney drafted the
23

24        [4]The Errata did not contain Ms. Haney's signature.
25 She therefore filed a correction that same day.  (See
   Doc. No. 24.)
26
27        [5]The only other exhibit Ms. Haney included is Exhibit
   R, which is a publicly available document that Defendants
   request the Court take judicial notice.  The Court,
28 therefore, considers this document.

1   document, witnessed the author draft the document, or is
2   familiar with the author's signature. . . . Where these
3   threshold requirements are not met, the evidence is
4   inadmissible."); see also Fed. R. Evid. 602 ("A witness
5   may testify to a matter only if evidence is introduced
6   sufficient to support a finding that the witness has
7   personal knowledge of the matter."); Fed. R. Evid.
8   901(a).  Ms. Haney's declaration does not authenticate
9   Exhibits A-Q.  Accordingly, the Court SUSTAINS
10  Defendants' objections (see Doc. No. 25) and does not
11  consider Exhibits A-Q attached to Doc. No. 23.

12
13                           * * *
14
15      On the merits, the Court finds it lacks subject-
16  matter jurisdiction over this case due to tribal
17  sovereign immunity.  It therefore GRANTS the Motion and
18  DISMISSES this action WITH PREJUDICE.
19
20                   **II. LEGAL STANDARD**
21      When invoked, tribal sovereign immunity deprives a
22  federal court of jurisdiction and requires dismissal
23  under Rule 12(b)(1).  Alvarado v. Table Mtn. Rancheria,
24  509 F.3d 1008, 1015-16 (9th Cir. 2007).  A Rule 12(b)(1)
25  jurisdictional attack may be "facial" or "factual."  Safe
26  Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.
27  2004) (citing White v. Lee, 227 F.3d 1214, 1242 (9th Cir.
28

2000)); <u>Kohler v. CJP, Ltd.</u>, 818 F. Supp. 2d 1169, 1172
(C.D. Cal. 2011).   In a facial attack, the challenging
party asserts that the allegations in the complaint are,
on their face, insufficient to invoke federal
jurisdiction.   <u>Id.</u>   In a factual attack, the challenging
party disputes the truth of the allegations that
otherwise would be sufficient to invoke federal
jurisdiction.   <u>Id.</u>; <u>Savage v. Glendale Union High Sch.</u>,
343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

In general, when reviewing a factual challenge to
subject matter jurisdiction, the court may review
evidence beyond the complaint without converting the
motion to dismiss into a motion for summary judgment.
<u>See Safe Air For Everyone</u>, 373 F.3d at 1039 (citing <u>Lee</u>,
227 F.3d at 1242).   The court does not presume the
truthfulness of the plaintiff's allegations, and it "is
ordinarily free to hear evidence regarding jurisdiction
and to rule on that issue prior to trial, resolving
factual disputes where necessary." <u>Augustine v. United
States</u>, 704 F.2d 1074, 1077 (9th Cir. 1983); <u>see also</u>
<u>O'Donnell v. Wien Air Alaska, Inc.</u>, 551 F.2d 1141, 1145
nn.3-4 (9th Cir. 1977).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III. DISCUSSION

"Indian tribes are 'domestic dependent nations' that exercise 'inherent sovereign authority.'" Michigan v. Bay Mills Indian Comty., 134 S. Ct. 2024, 2030 (2014) (quoting Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla., 498 U.S. 505, 509 (1991)).  They possess "the common-law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978).  Therefore, "an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998); see also White v. Univ. of California, 765 F.3d 1010, 1023 (9th Cir. 2014) ("Suits against Indian tribes are therefore barred absent congressional abrogation or a clear waiver from the tribe itself.").  "Tribal sovereign immunity may extend to subdivisions of a tribe," Native Am. Distrib. v. Seneca-Cayuga Tobacco Co., 546 F.3d 1288, 1292 (10th Cir. 2008), and "to tribal officials when acting in their official capacity and within the scope of their authority," Cook v. AVI Casino Enterprises, Inc., 548 F.3d 718, 727 (9th Cir. 2008).

Plaintiff asserts this Court has subject-matter jurisdiction over her lawsuit based on the general federal question statute, 28 U.S.C. § 1331.  (See FAC ¶

1.)[6]   The only federal claim she asserts is under the FMLA, 29 U.S.C. § 2601, et seq.[7]   As discussed below, however, tribal sovereign immunity precludes Plaintiff's lawsuit.

**A.   Morongo Is a Federally-Recognized Tribe, and MCRS Is an Arm of the Tribe**

The 2015 Federal Register recognizes the "Morongo Band of Mission Indians, California."   <u>See</u> Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs, 80 Fed. Reg. 1942, 1945 (Jan. 14, 2015).[8]   "Inclusion of a tribe on

_____

[6]She asserts subject-matter jurisdiction under several other statutes (<u>see</u> FAC ¶ 1), but these other statutes do not apply in this case.   <u>See</u> 28 U.S.C. § 451 (defining terms); 28 U.S.C. § 1343 (conferring jurisdiction over civil rights claims); 28 U.S.C. § 1337 (conferring jurisdiction "of any civil action pr proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies"); 20 U.S.C. § 1706 (conferring jurisdiction for "[c]ivil actions by individuals denied equal educational opportunities or by Attorney General").

[7]Plaintiff does not allege a claim for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").   She does, however, appear to imply such a claim.   (<u>See, e.g.</u> FAC ¶ 22.)   Even if Plaintiff did allege a claim under the ADA, it would fail: Congress has not abrogated a tribe's immunity to suit under that statute.   <u>See</u> <u>Florida Paraplegic Ass'n v. Miccosukee Indian Tribe</u>, 166 F.3d 1126, 1131-34 (11th Cir. 1999). The ADA specifically exempts Indian tribes from its definition of "employer," <u>see</u> 42 U.S.C. § 12111(5)(B)(i), and Plaintiff does not argue otherwise.

[8]A "district court may take judicial notice of the Federal Register and the Code of Federal Regulations." <u>See</u> <u>Crimm v. Missouri Pac. R. Co.</u>, 750 F.2d 703, 710 (8th
(continued...)

the Federal Register list of recognized tribes is generally sufficient to establish entitlement to sovereign immunity." <u>Larimer v. Konocti Vista Casino Resort, Marina & RV Park</u>, 814 F. Supp. 2d 952, 955 (N.D. Cal. 2011) (citing <u>Ingrassia v. Chicken Ranch Bingo and Casino</u>, 676 F. Supp. 2d 953, 957 (E.D. Cal. 2009)).

Plaintiff also alleges that Morongo is an "Indian Tribe." (FAC ¶ 2(a).) The Court therefore considers Morongo a federally-recognized Indian tribe.

"Tribal sovereign immunity not only protects tribes themselves, but also extends to arms of the tribe acting on behalf of the tribe." <u>White</u>, 765 F.3d at 1025. When "determining whether an entity is entitled to sovereign immunity as an 'arm of the tribe,'" courts in this Circuit apply several factors: (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities. <u>Id.</u>

---

[8](...continued)
Cir. 1984) (citing 44 U.S.C. § 1507 (1982)). The Court, therefore, GRANTS Defendant's request for judicial notice of the relevant portions of the Federal Register. (<u>See</u> Motion at 3 n.3; Doc. No. 14-3, Attachment 1 ¶ 1.)

1    Defendants assert Morongo is the sole owner of MCRS
2 (see Motion at 12 (citing, inter alia, 25 U.S.C. §
3 2710(b)(2)(A))), and the California Gambling Control
4 Commission Website lists MCRS as a casino associated with
5 the tribe.[9]  These facts alone are sufficient under White
6 to recognize MCRS as an arm of the tribe.  See Allen v.
7 Gold Country Casino, 464 F.3d 1044, 1046-47 (9th Cir.
8 2006) ("In light of the purposes for which the Tribe
9 founded this Casino and the Tribe's ownership and control
10 of its operations, there can be little doubt that the
11 Casino functions as an arm of the Tribe.  It accordingly
12 enjoys the Tribe's immunity from suit."); see also
13 Larimer, 814 F. Supp. 2d at 955 ("In light of the
14 undisputed status of Konocti Vista as a casino wholly
15 owned and operated by a tribe entitled to sovereign
16 immunity, the Court finds that the casino is immune from
17 suit in federal court as an arm of the tribe."); Morrison
18 v. Viejas Enterprises, No. 11-197, 2011 WL 3203107, at *4
19 (S.D. Cal. July 26, 2011) (holding that "the Indian
20 tribe's casino is entitled to sovereign immunity" as an
21 arm of the tribe).  Moreover, courts have recognized MCRS
22 as an arm of Morongo.  See Chavez v. Morongo Casino

23 _____

24    [9]See California Gambling Control Commission, List of Casinos,
25 www.cgcc.ca.gov/?pageID=tribalinfo&pageName=TribalInfo.com.  Although no party requests judicial notice of
26 this website, the Court may, on its own, "take notice of undisputed information available on a government
27 website."  Michael v. New Century Fin. Services, -- F. Supp. 3d --, 2014 WL 4099010, at *3 (N.D. Cal. Aug. 20,
28 2014); see also Fed. R. Evid. 201(c)(1).

<u>Resort & Spa</u>, No. E056191, 2014 WL 4053805, at *1, *5-6
(Cal. Ct. App. Aug. 15, 2014) (extending tribal sovereign
immunity to MCRS).

Finally, Plaintiff does not dispute MCRS's status as
an arm of the tribe.  She has, therefore, conceded this
point.  <u>See, e.g.</u> <u>Tait v. Asset Acceptance, LLC</u>, No. 12-
9532, 2013 WL 3811767, at *3 (C.D. Cal. July 22, 2013)
(holding plaintiff's failure to oppose argument amounted
to concession of that argument).

Accordingly, the Court considers Morongo a federally-
recognized Indian tribe, and MCRS as an arm of Morongo.
If tribal sovereign immunity shields Morongo from this
lawsuit, it also shields MCRS.

**B.   The FMLA Does Not Abrogate Tribal Sovereign Immunity**

The Supreme Court has established that "a
congressional decision" to abrogate tribal sovereign
immunity "must be clear."  <u>Bay Mills</u>, 134 S. Ct. at 2031.
"The baseline position," it has held, "is tribal
immunity; and to abrogate such immunity, Congress must
unequivocally express that purpose."  <u>Id.</u> (internal
quotations and alterations omitted).

Multiple courts have analyzed the FMLA and determined
that it does not abrogate tribal sovereign immunity.

1   <u>Carsten v. Inter-Tribal Council of Nevada</u>, 599 Fed. Appx.

2   659, 660 (9th Cir. Mar. 26, 2015) ("The district court

3   correctly held that the FMLA does not abrogate tribal

4   sovereign immunity."); <u>Chayoon v. Chao</u>, 355 F.3d 141, 143

5   (2d Cir. 2004) ("The FMLA makes no reference to the

6   amenity of Indian tribes to suit."); <u>Morrison</u>, 2011 WL

7   3203107, at *3 ("The Family Medical Leave Act is a law of

8   general application that is silent with respect to Indian

9   tribes."); <u>Pearson v. Chugach Gov. Services Inc.</u>, 669 F.

10  Supp. 2d 467, 477 (D. Del. 2009) ("The only courts to

11  examine whether tribal organizations are subject to the

12  FMLA's employer obligations held, based on the doctrine

13  of tribal immunity, th[at] there is not [a] private cause

14  of action under the FMLA against tribal organizations.");

15  <u>Myers v. Seneca Niagara Casino</u>, 488 F. Supp. 2d 166, 169

16  (N.D.N.Y. 2006) ("Thus, Congress has not expressly

17  abrogated the sovereignty of Indian Nations in the FMLA,

18  and Congress must expressly do so for there to be an

19  effective abrogation.").

20

21      Plaintiff does not argue otherwise.  This Court finds

22  no reason to deviate from the consensus.  It, too, holds

23  that Congress has not abrogated tribal sovereign immunity

24  under the FMLA.

25

26

27

28

14

**C.   Morongo Has Not Waived Its Immunity**

Even if Congress has not abrogated tribal sovereign immunity, an Indian tribe may waive its immunity.  "[T]o relinquish its immunity, a tribe's waiver must be 'clear.'"  <u>C&L Enterprises, Inc.</u>, 532 U.S. at 418 (quoting <u>Oklahoma Tax Comm'n</u>, 498 U.S. at 509).

Plaintiff makes two general arguments that Morongo has waived its immunity to employment-related lawsuits. First, she points to an agreement Morongo entered into with the State of California.  Second, she argues Morongo waived its immunity by extending Plaintiff and other employees leave under the FMLA.  Neither argument is convincing.

**1.   Morongo Did Not Waive Its Immunity to Employment-Related Lawsuits in Its Compact With the State of California**

Plaintiff argues Morongo's Amended Class III Gaming Compact, which it entered into with the State of California ("the Compact") (<u>see</u> Doc. No. 14-3, Attachment 2-4; Doc. No. 21-8),[10] contains a clear waiver of immunity

_____

[10]The Court GRANTS Defendants' request for judicial notice of the Compact and its various amendments (<u>see</u> Doc. No. 14-3, Attachments 2-4).  <u>See Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California</u>, 547 F.3d 962, 968 n.4 (9th Cir. 2008) (taking judicial notice of similar compacts and their amendments).

to employment-related lawsuits (see Opposition at 9-10).
Not so.

Morongo agreed in the Compact to "[a]dopt and comply
with standards no less stringent than the standards of
the Fair Labor Standards Act." (Doc. No. 21-8 ¶
10.2(l)(1).) The Fair Labor Standards Act ("FLSA") and
the FMLA are two different federal statutes. Compare
FLSA, 29 U.S.C. § 201, et seq., with FMLA, 29 U.S.C. §
2601, et seq. Plaintiff does not assert a claim under
the FLSA. Moreover, agreeing to adopt and comply with
the FLSA is not a clear waiver of immunity to suit under
that statute. The right to enforce Morongo's failure to
adopt and comply with the FLSA lies with the State of
California – not a third party like Plaintiff. (Doc. No.
14-3, Attachment 2 § 9.4(a)(3).) The Compact explicitly
states that it does not "create any right on the part of
a third party to bring an action to enforce any of its
terms." (Doc. No. 14-3, Attachment 2 § 15.1.)

Morongo also agreed in the Compact to "waive its
right to assert sovereign immunity . . . in connection
with any claim for bodily injury, property damage, or
personal injury arising out of, connected with, or
relating to the operation of the Gaming Facility." (Doc.
No. 21-8 ¶ 10.2(d)(i).) "[T]he Tribe," the Compact
continues, "has waived its right to assert sovereign

immunity for the purpose of arbitration of those claims."
(Id.)  Therefore, Morongo has waived its sovereign
immunity to claims arising out of bodily injury, property
damage, or personal injury at MCRS, but that waiver does
not extend to immunity from suit for employment-related
claims.  In fact, the Compact excludes from its
definition of "Compensable Injury" – and therefore
excludes from its dispute resolution process – "any
injury allegedly sustained . . . in connection with . . .
employment."  (See Doc. No. 14-3, Attachment 4 § 2.4.)

The Court will not infer a waiver of immunity as to
certain types of claims based on a separate, unrelated
waiver of different categories of claims.  Courts have
rejected similar arguments with little trouble.  See,
e.g., Harris v. San Manuel Band of Mission Indians, No.
14-2365, Doc. No. 22, at 3 (C.D. Cal. April 29, 2015)
("Section 10.2(d) relates only to the tribe's procurement
of insurance to cover claims for 'bodily injury, property
damage, and personal injury,' not claims for wrongful
termination or other state employment law claims.");[11]
Myers, 488 F. Supp. 2d at 171 ("[I]t would be too broad

_____

[11]The Court GRANTS Defendants' request for judicial
notice of this Order (see Doc. No. 15).  See, e.g., Fox
Television Stations, Inc. v. BarryDriller Content
Systems, PLC, 915 F. Supp. 2d 1138, 1142 (C.D. Cal. 2012)
("Courts may take judicial notice of another court's
opinion for the existence of the opinion, but not for the
truth of the facts recited therein.").  Because judicial
notice of this Order is proper, it DENIES Plaintiff's
objection.  (See Doc. No. 26.)

1  of a reading to find that simply because immunity was
2  waived as to gaming activities in a Compact between the
3  Nation and State of New York under the IGRA, that
4  immunity was also waived for unrelated employment claims
5  under the FMLA."); <u>Chavez</u>, 2014 WL 4053805, at *7 ("Since
6  the complaint did not fall within the Tribe's express
7  waiver related to arbitration lawsuits/petitions, we
8  conclude the trial court correctly found there was not
9  jurisdiction because Morongo is protected by its
10  sovereign immunity.").[12]

12      The Compact lacks a clear waiver of immunity from
13  suit for employment-related claims.

15      **2.   Adopting a Policy Does Not Constitute a Clear**
16          **Waiver of Immunity**
17      Plaintiff next argues that because Morongo provided
18  her leave under a policy similar to the FMLA, it has
19  waived immunity to suit under the FMLA.  (<u>See</u> FAC ¶¶ 6,
20  14.)  That Morongo has instituted a policy to provide its

22      [12]For comparison, Defendants request judicial notice
23  of the Tribal-State Compact Between the State of
   California and the Habematolel Pomo of Upper Lake.  (<u>See</u>
24  Doc. No. 14-3, Attachment 5.)  The Court GRANTS that
   request.  <u>See</u> <u>Cachil Dehe Band</u>, 547 F.3d at 968 n.4
25      In that compact, "the Tribe expressly waive[d], and
   also waive[d] its right to assert, sovereign immunity
26  with respect to the binding arbitration of claims for
   harassment, retaliation, or employment discrimination . .
27  . ."  (<u>See</u> Doc. No. 14-3, Attachment 5 ¶ f(2)(C).)  No
   such provision appears in the Compact between the State
28  of California and Morongo.

employees protections similar to those available under
the FMLA does not mean, however, it has also waived any
immunity.  This Court does not break new ground by
requiring a clear waiver of immunity instead of inferring
such a waiver from the adoption of a policy.  See Myers,
488 F. Supp. 2d at 169-70 (noting that merely referencing
"an employee's eligibility and rights under the FMLA, but
. . . not mention[ing] dispute resolution or jurisdiction
in any fashion" could not amount to a waiver of tribal
sovereign immunity because "[c]learer and more
unequivocal evidence is required"); see also Allen, 464
F.3d at 1047 (holding general statements in employment
application, including that employee could be terminated
"for any reason consistent with applicable state or
federal law," did not waive immunity because "[t]hese
statements [we]re not a 'clear' waiver of immunity"); cf.
C&L Enterprises, 532 U.S. at 414 (holding tribe waived
its immunity when it expressly agreed to arbitrate
disputes arising out of a specific contract).

     Based on the evidence presented, this Court does not
find that Morongo or MCRS has waived immunity to suit
under the FMLA.

**D.   The Individual Defendants Also Have Immunity From Plaintiff's Lawsuit**

Plaintiff also sues two individual Defendants: Kandi Kelley and Briton Cook (collectively "Individual Defendants").  Plaintiff mentions the Individual Defendants just once in her FAC.  (See FAC ¶ 2(b) ("Defendant Kandi Kelley is a non-Indian/non-tribal official of Morongo and Defendant Briton Cook is a non-Indian/non-tribal official of Morongo.  Both are agency officers in their official capacities.").  Plaintiff's FAC provides no other information about, inter alia, who the Individual Defendants are or what wrongdoing they allegedly committed.  Accordingly, she has failed to allege sufficient facts, as Federal Rule of Civil Procedure 8 requires, to state any employment-related claims against the Individual Defendants.  In any event, they are also entitled to immunity.

Plaintiff sues the Individual Defendants in their official capacities.  (FAC ¶ 2(b) ("Both are agency officers in their official capacities.").  A tribe's sovereign immunity "protects tribal officials acting within the scope of their valid authority." Burlington N. & Santa Fe Ry. Co. v. Vaughn, 509 F.3d 1085, 1091-92 (9th Cir. 2007); see also Chayoon, 355 F.3d at 143 ("Furthermore, Chayoon cannot circumvent tribal immunity by merely naming officers or employees of the Tribe when

the complaint concerns actions taken in defendants'
official or representative capacities and the complaint
does not allege they acted outside the scope of their
authority.").  As Plaintiff only sues the Individual
Defendants in their official capacities, the tribe's
sovereign immunity shields them from Plaintiff's lawsuit.

In her Opposition, Plaintiff asserts for the first
time that the Individual Defendants acted outside the
scope of their authority.  (See Opposition at 1.)  An
official is not immune from suit when "acting wholly
outside the scope of . . . discretionary authority."
Harbert Intern., Inc. v. James, 157 F.3d 1271, 1281 (11th
Cir. 1998).  Plaintiff's FAC, however, contains no facts
that would support that conclusion.  In her Opposition,
Plaintiff asserts that she learned "from another employee
that [the Individual Defendants] had been trying to get
other non-Indian employees to join in and assist them in
firing [her] by providing false statements against her."
(Opposition at 4-5.)  This statement appears only in her
Opposition – not the FAC – and is unsupported.

In any event, Plaintiff seeks to compel arbitration.
Such relief would function against the tribe, not the
Individual Defendants.  See Maxwell v. County of San
Diego, 708 F.3d 1075, 1088 (9th Cir. 2013) (holding
courts must be sensitive to whether the judgment sought

in an individual capacity suit would "interfere with the public administration, or if the effect of the judgment would be to restrain the sovereign from acting, or to compel it to act."). The remedy sought here – arbitration – is not like a claim for money damages, where the remedy applies against the Individual Defendants' pockets; it necessarily functions against the sovereign.

Accordingly, the Individual Defendants have immunity from Plaintiff's lawsuit.[13]

**E.   Plaintiff's Exhaustion Argument Is Misplaced**

Plaintiff focuses most of her Opposition on arguing that until she has "exhausted the available remedies in the Tribal Court, it would be premature for the District Court to consider any relief." (Opposition at 9.)

Here, Defendants correctly point out that no tribal remedies are available. (See Reply at 2-3). Plaintiff even alleges she received a letter from Morongo stating that arbitration was not available for employment-related claims. (FAC ¶ 16.) Exhaustion is not required, in a

---

[13]As Plaintiff has not asserted a proper claim against an Individual Defendant, the Court does not determine whether the FMLA applies to the tribe notwithstanding tribal sovereign immunity. See Carsten, 2015 WL 1345535, at *1 n.2 ("[W]hether a statute abrogates tribal sovereign immunity and whether a statute applies to tribes are two distinct inquiries.").

1   case such as this, where it would be futile.   Iowa Mut.,

2   480 U.S. at 19 n.12.

3

4        Plaintiff filed this lawsuit.   The cases she cites

5   support the proposition that a defendant – not a

6   plaintiff – can seek a stay or dismissal to exhaust

7   tribal remedies.   See Iowa Mut. Ins. Co. v. LaPlante, 480

8   U.S. 9 (1987) (court should have required exhaustion

9   where defendant moved to dismiss on that basis); Nat'l

10  Farmers Union Ins. Cos. v. Crow Tribe of Indians, 541

11  U.S. 845, 856 (1985) (same); Sharber v. Spirit Mountain

12  Gaming Inc., 343 F.3d 974, 975 (9th Cir. 2003) (holding

13  district court did not err "in concluding that tribal

14  courts should have first opportunity to determine whether

15  they have jurisdiction to hear actions based on the

16  [FMLA]"); Stock West Corp v. Taylor, 964 F.2d 912, 916,

17  920 (9th Cir. 1992) (dismissing case on exhaustion

18  grounds because defendant moved for abstention based on

19  "principles of comity"); see also Paddy v. Mulkey, 656 F.

20  Supp. 2d 1241, 1247-48 (D. Nev. 2009) (staying case

21  pending exhaustion when the court raised the issue sua

22  sponte and then defendant requested stay).   Unlike those

23  cases, Defendants here do not request a stay pending

24  exhaustion of tribal remedies.

25

26       What Plaintiff seeks is an injunction requiring the

27  Morongo tribal courts to hear her case, or for Morongo to

28

1  have to arbitrate this dispute.  As discussed, this Court

2  cannot provide such relief because Defendants have

3  immunity.

4

5  **F.   Plaintiff Did Not Serve Defendants Properly**

6        In any event, Plaintiff did not properly serve

7  Defendants.  Assuming Plaintiff has served MCRS properly

8  (See Motion at 15 ("Even if delivery of a single copy of

9  the Summons and FAC to a receptionist in the MCRS

10  Executive Offices could constitute sufficient service on

11  MCRS . . . .")), she did not properly serve the remaining

12  Defendants.  Plaintiff served the FAC on Faith Cartagena

13  through process server Rod Collins, who swears under

14  penalty of perjury that Ms. Cartagena was authorized to

15  accept service of process on behalf of the Defendants.

16  (Doc. No. 14-2 ("Cartagena Decl.") ¶ 7; Doc. Nos. 10-13.)

17

18       Ms. Cartagena is employed as the Executive

19  Receptionist at the MCRS Executive Offices in Cabazon,

20  California.  (Cartagena Decl. ¶ 2.)  On March 19, 2015,

21  Mr. Collins left Ms. Cartagena an unmarked envelope and

22  instructed her to give the envelope to her supervisor.

23  (Id. ¶ 6.)  Mr. Collins did not tell Ms. Cartagena what

24  was in the envelope or that she was being served with

25  legal process, nor did he ask Ms. Cartagena whether she

26  was authorized to accept service of process on behalf of

27  any entity or individual.  (Id.)

28

1    In fact, Ms. Cartagena declares that she is not

2 designated as an agent for service of process by any of

3 the four Defendants.  (<u>Id.</u> ¶ 5.)  Further, there is

4 nothing in the record to establish that Ms. Cartagena, in

5 her role as Executive Receptionist, was authorized to

6 accept service of process on behalf of any Defendant.

7 "Rule 4 has generally been construed to mean that service

8 at a defendant's place of employment is insufficient."

9 <u>Daly-Murphy v. Winston</u>, 837 F.2d 348, 355 (9th Cir. 1987)

10 (citing <u>Smith v. Western Offshore, Inc.</u>, 590 F. Supp.

11 670, 684 (E.D. La. 1984); <u>Guyette v. Stauffer Chemical</u>

12 <u>Co.</u>, 518 F. Supp. 521, 527 (D.N.J. 1981)).  Therefore,

13 service of process was not proper.

14

15    Further, Plaintiff does not address the issue of

16 proper service in her Opposition.[14]  She has, therefore,

17 conceded this point.

18

19

20

21 _____

22    [14]As discussed earlier, Plaintiff attempted numerous
times to file exhibits with her Opposition.  On May 21,

23 2015, she filed a declaration in connection with these
attempts, in which she requested additional time to

24 effect proper service of process.  (Doc. No. 21.)  Six
days later, however, she filed a "Notice Errata;

25 Declaration of Gloria Dredd Haney," in which she
explained the declaration she filed as Doc. No. 21 "was

26 an inadvertent error and mistake" and thus, she withdrew
that declaration. (Doc. No. 23 ¶ 3.)  The Court,

27 therefore, does not consider Ms. Haney's statements
regarding a request for additional time to effect service

28 of process in Doc. No. 21.

1    Accordingly, the Court holds Plaintiff did not

2  properly serve Morongo or the Individual Defendants with

3  the FAC.

4

5                        **IV. CONCLUSION**

6    The Court, therefore, GRANTS the Motion and DISMISSES

7  this action WITH PREJUDICE.[15]

8

9

10

Dated: June 17, 2015

11                        _____

                          VIRGINIA A. PHILLIPS

12                        United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25  _____

26    [15]With this conclusion, the Court does not reach
    Defendants' alternative arguments for dismissal based on

27  lack of personal jurisdiction, and failure to state a
    claim under Federal Rule of Civil Procedure 12(b)(6).

28  (See Notice at 2.)